IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CASE NO.: 1:11-CV-127(WLS) |
| | : | |
| RICHARD MIDDLETON, CIRCLE | : | |
| ENVIRONMENTAL, INC., BSJR, LLC, and | : | |
| WATERPOLLUTIONSOLUTIONS.COM, | : | |
| INC., | : | |
| | : | |
| Defendants. | : | |
| | : | |

## ORDER

Presently pending before the Court is Richard Middleton, Circle Environmental, Inc., and Waterpollutionsolution.com, Inc.'s (hereinafter "Defendants") Motion for Summary Judgment. (Doc. 49.)  For the following reasons, Defendants' Motion for Summary Judgment is **DENIED**.

## RELEVANT FACTUAL AND PROCEDURAL BACKGROUND[1]

On September 7, 2007, in response to alleged operational errors, Edwin Williams ("Williams") with the Georgia Department of Natural Resources ("GDNR") notified the

---

[1] The following facts are derived from the Complaint (Doc. 1); BSJR, Inc.'s Answer (Doc. 15); Circle Environmental, Inc., Waterpollutionsolutions.com, Inc., and Richard Middleton's Answer (Doc. 16); Defendants' Statement of Undisputed Facts (Doc. 49-2); Government's Response to Defendants' Statement of Undisputed Facts (Doc. 54-1); Defendants' Reply in Support of its Statement of Undisputed Facts (Doc. 58-1); and the Record in this case. Where relevant, the factual summary also contains undisputed and disputed facts derived from the pleadings, the discovery and disclosure materials on file, and any affidavits, all of which are construed in the light most favorable to the Government as the nonmoving party.  *See* Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).

United States National Response Center of hazardous material wasted at two sites: 170 5th Avenue, Terrell County, Georgia (hereinafter "Site 1") and 2222 Albany Highway, Terrell County, Georgia (hereinafter "Site 2").  (Doc. 49-2, at ¶¶1-3.)  Williams' notification, identifying Circle Environmental, Inc. as the suspected responsible party, (Doc 49-4; Doc. 49-6), caused the United States Environmental Protection Agency ("EPA") to send an on-scene coordinator named Dr. James. W. Webster to both locations on September 10, 2007. (*Id.*)  On September 11, 2007, after Dr. Webster observed both Site 1 and Site 2, the EPA initiated emergency removal actions at both sites.  (Doc. 49-2, at ¶4.)

      As on-scene coordinator for the removal actions at Site 1 and Site 2, Dr. Webster received assistance from the EPA's Superfund Technical Assessment and Response Team ("START"), various EPA contractors, and EPA's Emergency Rapid Response Services ("EERS").  (Doc. 49-2, at ¶4.)  On May 15, 2008, a START contractor for Site 1 and Site 2 provided Dr. Webster with a Response Report for the field activities conducted on both sites from September 11 through December 19, 2007.  (Doc. 49-9.)  All on-site removal activities continued until December 18, 2007.  (Doc. 49-25, Doc. 49-26.)  After receiving START's Response Report, Dr. Webster requested a review of the analytical data regarding air samples in START's Response Report by EPA's Technical Services Section ("TSS") to determine whether further action was required.  (Doc. 49-2, at ¶45.)  On June 19, 2008, TSS concluded their review of the Response Report's air samples and submitted a Memorandum with several comments and suggestions.  (Doc. 49-24.)  Dr. Webster received TSS's Memorandum on June 23, 2008.  (Doc. 49-2 at 11.)  On September 18, 2008, after some delay due to a considerable workload and job promotion, Dr. Webster was finally able to finish his Final Pollution Report ("FPR") reviewing all of the site data, including the TSS's Memorandum.  (Doc. 49-2, at ¶50.)  As of February 28, 2011, the EPA identified $578, 283.34 at Site 1 and $135,463.20 at Site 2 in outstanding costs as a result of their emergency removal.  (Doc. 1, at ¶37.)

On September 16, 2011, to recover costs under Section 107(a) of the Comprehensive Environmental Response, Compensation and Liability Act of 1980 ("CERCLA"), 42 U.S.C. § 9607(a), the Government filed its complaint in the above-captioned matter against Defendants John Middleton, owner and operator of both Circle Environmental, Inc. and Waterpollutionsolutions.com, Inc., the entity Circle Environmental, Inc., and the entity Waterpollutionsolutions.com, Inc. (Doc. 1). On January 31, 2014, Defendants filed the present Motion for Summary Judgment, claiming the Government was barred by CERCLA's statute of limitations from bringing its complaint. (Doc. 49-1). On March 10, 2014, the Government filed a response opposing Defendants' Motion for Summary Judgment. (Doc 54). On March 24, 2014, Defendants filed their reply to the Governments opposition. (Doc. 58).

## DISCUSSION

**I.     Defendant's Motion for Summary Judgment**

    **a.  Federal Rule of Civil Procedure 56**

"Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Chow v. Chak Yam Chau*, No. 12-15994, 2014 WL 92094, *3 (11th Cir. Jan. 10, 2014) (citing *Maddox v. Stephens*, 727 F.3d 1109, 1118 (11th Cir. 2013)). "A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor." *Grimes v. Miami Dade Cnty.*, 552 F. App'x 902, 904 (11th Cir. 2014) (citing *Chapman v. AI Transp.*, 229 F.3d 1012, 1023 (11th Cir. 2000)). "An issue of fact is 'material' if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "It is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the

3

nonmoving party." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 998 (11th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The movant bears the initial burden of showing, by reference to the record, that there is no genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Barreto v. Davie Marketplace, LLC*, 331 F. App'x 672, 673 (11th Cir. 2009). The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by demonstrating to the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *See Celotex*, 477 U.S. at 322-24. Once the movant has met its burden, the nonmoving party is required "to go beyond the pleadings" and identify "specific facts showing that there is a genuine issue for trial." *Id.* at 324. To avoid summary judgment, the nonmoving party "must do more than summarily deny the allegations or 'show that there is some metaphysical doubt as to the material facts.'" *Matsuhita*, 475 U.S. at 586 (citations omitted). Instead, the nonmovant must point to record evidence that would be admissible at trial. *See Jones v. UPS Ground Freight*, 683 F.3d 1283, 1294 (11th Cir. 2012) (quoting *Macuba v. Deboer*, 193 F.3d 1316, 1322 (11th Cir. 1999)) (noting that hearsay may be considered on a motion for summary judgment only if it "could be reduced to admissible evidence at trial or reduced to admissible form"). Such evidence may include affidavits or declarations that are based on personal knowledge of the affiant or declarant. *See* Fed. R. Civ. P. 56(c)(4).

On a motion for summary judgment, the Court must view all evidence and factual inferences drawn therefrom in the light most favorable to the nonmoving party and determine whether that evidence could reasonably sustain a jury verdict. *See Celotex*, 477 U.S. at 322-23; *Allen*, 121 F.3d at 646. However, the Court must grant summary judgment if there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

**B. Local Rule 56**

Local Rule 56 requires the following:

> The respondent to a motion for summary judgment shall attach to the response a separate and concise statement of material facts, numbered separately, to which the respondent contends there exists a genuine issue to be tried. Response shall be made to each of the movant's numbered material facts. All material facts contained in the moving party's statement which are not specifically controverted by the respondent in respondent's statement shall be deemed to have been admitted, unless otherwise inappropriate.

M.D. Ga. L.R. 56. Here, Defendants properly filed a summary judgment motion with a statement of undisputed facts, as required by the Federal Rules of Civil Procedure and the Local Rules of this Court. (*See* Doc 49; Doc. 49-1; Doc 49-2.) Likewise, the Government filed the proper response to Defendants' statement of material facts. (*See* Doc. 54.) Having established the applicable standards, the Court will proceed with reviewing the Motion's merits.

## II. ANALYSIS

Defendants' Motion for Summary Judgment rests entirely on the contention Section 17(a) of CERCLA bars the Government's complaint seeking clean-up costs. 42 U.S.C. §9613(g)(2)(A). CERCLA has two different statutes of limitations, one for remedial actions and another for removal actions. Removal actions are short-term, temporary responses to a release or threatened release of hazardous waste. *Union Carbide Corp. v. Thiokol Corp.*, 890 F.Supp. 1035, 1040 (S.D. Ga. 1994). Remedial actions are "long-term, more thoroughly researched and planned permanent" remedies to the release or threatened release of hazardous substances. *Id.* EPA's efforts at both Site 1 and Site 2, attempting to quickly resolve release and threatened release of hazardous waste, are removal actions. For removal actions, CERCLA establishes a three-year statute of limitation which begins to accrue at the completion of a removal action. 42 U.S.C. §9613(g)(2)(A).

The question before this Court in deciding Defendants' Motion for Summary Judgment is what constitutes completion of a removal action under CERCLA. When interpreting a statute, the starting point is always the statutory language itself. *Med. Transp. Mgmt. Corp. v. Comm'r of Internal Revenue Serv.,* 506 F.3d 1364, 1367 (11th Cir. 2007). In evaluating the statutory language, courts can look to the statutory language itself, the specific context in which the language is used, and broader context of the language as a whole. *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1989). Where the statutory language is plain and unambiguous the Court's inquiry must cease. *Id.* at 341.

Section 9613(g)(2)(A) makes clear "an initial action for recovery of cost must be commenced—(A) for a removal action, *within 3 years after completion of the removal action*…." 42 U.S.C. §9613(g)(2)(A) (*emphasis added*). To identify when a removal action is complete, evaluating the statute as a whole, courts look to the definition of "remove" and "removal" as defined by CERCLA:

> The terms "remove" or "removal" means the cleanup or removal of released hazardous substances from the environment, such actions as may be necessary taken in the event of the threat of release of hazardous substances into the environment, *such actions as may be necessary to monitor, assess*, *and evaluate* the release or threat of release of hazardous substances, the disposal of removed material, or the taking of such other actions as may be necessary to prevent, minimize, or mitigate damage to the public health or welfare or to the environment, which may otherwise result from a release or threat of release.

42 U.S.C. §9601(23) (*emphasis added*).

Defendants argue EPA completed its removal action, at the very latest, on June 19, 2008, when TSS concluded review of START's Response Report finding no further remediation necessary. (Doc 49-1, 14-15.) As support for their argument, Defendants rely in part on three cases, *Chromatex, Williams, and Allied Battery*, all of which identify the equivalent of a TSS report completing removal. *United States v. Chromatex, Inc.,* 832 F. Supp.

900 (M.D. Pa. 1993); *United States v. Williams,* No. 98-2704, 1999 WL 33841417 (W.D. Tenn. Feb. 9, 1999); *United States v. Allied Battery Co.,* No. CV 98-N-0446-S, CV 98-N-2561-S, 2000 WL 34335806 (N.D. Ala. Jan 14, 2000). Contrary to Defendants' assertion, *Chromatex, Williams,* and *Allied Battery,* all weaken rather than strengthen their argument. Each case makes clear that the EPA, under CERCLA's statute of limitations, does not have to "expedite it's activities for the benefit of potential defendants", and that the statute of limitations under CERCLA is intended to be liberally construed in the EPA's favor. *Chromatex,* at 902. Consistent with this Court's view, all three cases also establish that instead of identifying a specific document as marking the end of removal, courts must decipher whether EPA's activities are relevant to monitoring, assessing, or evaluating removal activities; if relevant, removal is only completed after that activity ends.

For instance, the defendants in *Chromatex* claimed inspection of water meters, photographing the site, and completion of a final Technical Assistance Team report were not related to completing removal. *Id.* Defendants in that case also argued there was no reason for the EPA to wait such a long period to perform documentation and reporting requirements. *Id.* Disagreeing, the Court in *Chromatex* viewed EPA's documentation and reporting a necessary and acceptable part of the removal process even if such activities were delayed and unrelated to on-site removal actions. *Id.* at 902-03. Sharing the reasoning in *Chromatex,* the Court in *Williams* found delayed final reports unrelated to on-site activities part of removal as well. *Williams,* at *3. Reviewing both case law and CERCLA, the *Williams* court determined there is no need for assessments to be based strictly on on-site removal actions and that the "EPA is permitted to act slowly." *Id.* Building on the *Chromatex* and *Williams* rationales, the Court in *Allied Battery* determined an on-scene coordinator's final report issued to "inform and educate" other EPA on-scene coordinators about removal technologies as part of the removal process should not to be ignored for statute of limitation purposes even though such activities were not statutorily mandated. *Allied Battery,* at *8.

Section 9613(g)(2)(A)'s clear definition of removal, including "assessment and monitoring" as part of the completion process, and the very cases Defendants' rely on, support concluding Dr. Webster's FPR should not be ignored when considering CERCLA's statute of limitations.  Dr. Webster's FPR for both Site 1 and Site 2 includes a summary of activities taking place at both removal sites, evaluates all of the findings throughout the removal process including the air quality report conducted by TSS, and reviews EPA's financial expenditures at each site.  Even under a narrower view of Section 9613(g)(2)(A), Dr. Webster's FPR submission on September 18, 2008 would be the actual date removal was completed, commencing CERCLA's statute of limitation less than three years before Plaintiff's complaint was filed.

Defendants last argue that in addition to Section 9613(g)(2)(A) barring the Government's action since removal was completed outside of three years, CERCLA's Section 104(c)(1), 42 U.S.C. § 9604(c)(1), restricts any consideration of removal actions taking place a year after activities at Sites 1 and 2 were initiated by the EPA. Section 104(c)1 of CERCLA specifies that funding for EPA's removal actions "other than those authorized by subsection (b) of this section, shall not continue after… 12 months has elapsed from the date of the initial response."  42 U.S.C. § 9604(c)(1).  Reiterating Section 104(c)1 directions, EPA's Federal Regulations note that removal actions, absent certain decisions from EPA, "other than those authorized under section 104(b) of CERCLA, shall be terminated after… 12 months."  40 C.F.R. § 300.415(b)(5).  Activities under subsection (b) of this section, exempt from the 12-month limitation period, permit the President through the EPA to gather certain information:

> "[The President] may undertake such investigations, monitoring, surveys, testing, and other information gathering as he may deem necessary or appropriate to identify the existence and extent of the release or threat thereof, the source and nature of the hazardous substances, pollutants or

8

contaminants involved, and the extent of danger to the public health or welfare or to the environment."

42 U.S.C. § 9404(b)1.

As documented by Dr. Webster, and noted by the Government, all on-site activities falling under the statutory purview of the 12-month limitation period took place between early September 2007 when on-site removal was initiated, and December 18, 2007 when on-site activities were completed, less than a three month period. (Doc. 49-25; Doc. 49-26.) The remaining activities conducted by the EPA are precisely those covered under subsection (b), thus exempted from the 12 month limitation period altogether. As a consequence, while on-site removal activities continued until September 18, 2008, because those activities dealt with monitoring, testing, and further analysis of information, the Governments activities are in accord with Section 104(c)1's directives as well. Accordingly, the Court rejects Defendants' argument. Dr. Webster's FPR filed on December 18, 2008 is when removal was completed and, as a result, the Government's complaint is within the three-year limitation period set by CERCLA.

## **CONCLUSION**

For the foregoing reasons, Defendants' Motion for Summary Judgment (Doc. 49) is **DENIED**.

**SO ORDERED**, this  30th  day of September, 2014.

/s/ W. Louis Sands

**W. LOUIS SANDS, JUDGE**
**UNITED STATES DISTRICT COURT**

9