**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**ALBANY DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CASE NO.: 1:11-CV-127(WLS) |
| | : | |
| RICHARD MIDDLETON, CIRCLE | : | |
| ENVIRONMENTAL, INC., BSJR, LLC, and | : | |
| WATERPOLLUTIONSOLUTIONS.COM, | : | |
| INC., | : | |
| | : | |
| Defendants. | : | |
| | : | |

## ORDER

Before the Court is the Government's Motion for Summary Judgment against Defendant BSJR, LLC. (Doc. 78.) For the following reasons, the Government's Motion for Summary Judgment is **GRANTED**.

## PROCEDURAL BACKGROUND

On September 16, 2011, the Government initiated the above-captioned case by filing a complaint against Defendants Circle Environmental, Inc., Waterpollutionsolutions.com, BSJR, LLC, and John Middleton, owner and operator of both Circle Environment, Inc. and Waterpollutionsolutions.com. (Doc. 1.) On January 31, 2014, Defendants Circle Environmental Inc., Waterpollutionsolutions.com, Inc., and Richard Middleton filed a Motion for Summary Judgment against the Government. (Doc. 49.) On September 30, 2014, this Court denied Defendants' Motion for Summary Judgment. (Doc. 65.) On December 8, 2014, the Government filed the instant Motion for Summary Judgment with the Court against BSJR, LLC. (Doc. 78.) Defendant BSJR, LLC did not file a response. On March 23, 2015, the Court received notice from the Government that a tentative consent decree was entered into with Defendants Circle Environmental Inc., Waterpollutionsolutions.com, Inc., and Richard Middleton that would resolve all of the Government's claims against those

Defendants. (Doc. 81.) On May 19, 2015, after allowing the requisite public comment period as a matter of law, the Court entered an Order adopting the parties' proposed Consent Decree that resolved the Government's claims against Defendants Circle Environmental Inc., Waterpollutionsolutions.com, Inc., and Richard Middleton. (Doc. 85.) The Government's claims against BSJR are not addressed by the Consent Decree. After a review of the record, the Court hereby finds that the instant motion is ripe for review.

## SUMMARY JUDGMENT STANDARD

### I.     Federal Rule of Civil Procedure 56

Federal Rule of Civil Procedure 56 allows a party to move for summary judgment when a party contends no genuine issue of material fact remains and the party is entitled to judgment as a matter of law. "Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Chow v. Chak Yam Chau*, 555 Fed. App'x 842, 847 (11th Cir. 2014) (citing *Maddox v. Stephens*, 727 F.3d 1109, 1118 (11th Cir. 2013)). "A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor." *Grimes v. Miami Dade Cnty.*, 552 F. App'x 902, 904 (11th Cir. 2014) (citing *Chapman v. AI Transp.*, 229 F.3d 1012, 1023 (11th Cir. 2000)). "An issue of fact is 'material' if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "It is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 998 (11th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The movant bears the initial burden of showing, by reference to the record, that there is no genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Barreto v. Davie Marketplace, LLC*, 331 F. App'x 672, 673 (11th Cir. 2009). The movant can meet this burden by presenting evidence showing there is no genuine dispute of material

fact, or by demonstrating to the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *See Celotex*, 477 U.S. at 322-24. Once the movant has met its burden, the nonmoving party is required "to go beyond the pleadings" and identify "specific facts showing that there is a genuine issue for trial." *Id.* at 324. To avoid summary judgment, the nonmoving party "must do more than summarily deny the allegations or 'show that there is some metaphysical doubt as to the material facts.'" *Matsushita*, 475 U.S. at 586 (citations omitted). Instead, the nonmovant must point to record evidence that would be admissible at trial. *See Jones v. UPS Ground Freight*, 683 F.3d 1283, 1294 (11th Cir. 2012) (quoting *Macuba v. Deboer*, 193 F.3d 1316, 1322 (11th Cir. 1999)) (noting that hearsay may be considered on a motion for summary judgment only if it "could be reduced to admissible evidence at trial or reduced to admissible form"). Such evidence may include affidavits or declarations that are based on personal knowledge of the affiant or declarant. *See* Fed. R. Civ. P. 56(c)(4).

On a motion for summary judgment, the Court must view all evidence and factual inferences drawn therefrom in the light most favorable to the nonmoving party and determine whether that evidence could reasonably sustain a jury verdict in its favor. *See Celotex*, 477 U.S. at 322-23; *Allen*, 121 F.3d at 646. However, the Court must grant summary judgment if there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

### b. Local Rule 56

Local Rule 56 requires the following:

> The respondent to a motion for summary judgment shall attach to the response a separate and concise statement of material facts, numbered separately, to which the respondent contends there exists a genuine issue to be tried. Response shall be made to each of the movant's numbered material facts. All material facts contained in the moving party's statement which are not specifically controverted by the respondent in respondent's statement shall be deemed to have been admitted, unless otherwise inappropriate.

M.D. Ga. L.R. 56.  The Government has properly filed a summary judgment motion with a statement of undisputed facts, as required by the Federal Rules of Civil Procedure and the Local Rules of this Court. (Docs. 41, 41-4.) Defendant BSJR did not respond to the Government's summary judgment motion or undisputed facts as required. The Government's Statement of Material Facts are admitted as a result of Defendant BSJR's failure to dispute those facts in accordance with Local Rule 56. [1] Having established the applicable standards, the Court will now proceed with reviewing the merits of the Government's Motion.

## FACTUAL BACKGROUND[2]

The Government alleges that G. Scott Harpole, owner and operator of an industrial rag and absorbent dry cleaning operation in Dawson, Georgia from November 1994 until May 2006, initially stored the hazardous substances at issue in the above-captioned case. (Doc. 78-2 at ¶¶ 1-4.) From 1997 to May 2006, Harpole's company transitioned from a water-washing to dry cleaning operation handling absorbents, including drums and other containers used by Circle Environmental of Kentucky and South Carolina. (*Id.* at ¶ 7.)  As Harpole's relationship with Circle Environmental continued he agreed in 2005 to re-lease his storage site at 170 5th Avenue, Terrell Country, Georgia (hereinafter "Site 1") to Circle Environmental to handle absorbents and other materials. (*Id.* at ¶ 9.) In May 2006, Harpole ceased operating his dry cleaning business which required the removal of drums and other materials from Site 1. (*Id.* at ¶ 10.) On September 5, 2007, Site 1 was brought to the attention of local authorities after receiving a complaint of strong chemical odors in the

---

[1] The Court is nevertheless required to make an independent review of the record before deciding the Government's Motion for Summary Judgment. *See United States v. Delbridge*, No. 1:06-cv-110, 2008 WL 1869867, at *3 (M.D. Ga. Feb. 22, 2008) (WLS) (concluding that Eleventh Circuit precedent does not allow a district court to grant a summary judgment based on default). However, it must be noted that "[t]here is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment." *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995).

[2] The following facts are derived from the Complaint (Doc. 1), the Government's Statement of Undisputed Facts (Doc. 78-2), and the Record in this case. Where relevant, the factual summary also contains undisputed and disputed facts derived from pleadings, the discovery and disclosure materials on file, and any affidavits, all of which are construed in the light most favorable to Defendant BSJR, LLC. as the nonmoving party. *See* Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

vicinity of Site 1. (*Id.* at ¶ 11.) Responding to that complaint, Fire Department Captain James Russell "Rusty" Hunter stated he saw a number of drums and three workers loading rags into a roll-off dumpster. (*Id.* at ¶ 13.) Around that same time, Harpole approached John Harris, owner and operator of BSJR, LLC. ("BSJR"), to ask if drums and other absorbents could be stored on BSJR's property located at 2222 Albany Highway, Terrell County, Georgia (hereinafter "Site 2"). BSJR entered an agreement with Harpole to store drums and other absorbents at Site 2. (*Id.* at ¶ 21.) Harris and Harpole discussed and eventually agreed on where the drums and other materials would be placed on BSJR's property. (*Id.* at ¶¶ 21-22.) Harris resided at Site 2 and witnessed drums and other absorbents being moved to and placed on the site. (*Id.* at ¶ 22.) Site 2 was not fenced in and could be accessed by anyone interested in entering the property. (*Id.* at ¶ 23.)

Georgia Environmental Protection Division ("GAEPD") first investigated Site 1 on September 7, 2007 after receiving notice from local law enforcement and then alerted the Environmental Protection Agency ("EPA"). (*Id.* at ¶ 32.) On September 10, 2007, Dr. Edwin Webster, an On-Scene Coordinator for the EPA, evaluated both Sites 1 and 2 for hazardous waste. (*Id.* at ¶¶ 33, 34.) Given the serious condition of both Sites 1 and 2, the EPA initiated Emergency Removal Actions. (*Id.*) At Site 2 the removal included on-site activities and off-site activities to determine the extent of the removal actions needed by the EPA. (*Id.* at ¶ 40.)[3] A laboratory report conducted by the EPA discovered acetone, benzene, ethylbenzene, xylenes, antimony, chromium, cooper, lead, mercury, nickel and zinc from the drum samples collected at Site 2, all considered hazardous substances under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"). (*Id.* at ¶ 48.) Soil samples at Site 2 also uncovered several hazardous substances under CERCLA as well. (*Id.* at ¶ 50.) During the EPA's air monitoring at Site 2, the volatile organic compounds ("VOCs") detected were so high that respiratory protection was necessary while performing the assessment. (Doc. 78-2 at ¶ 41(h).)  As of April 21, 2014, the EPA incurred $212,810.88 to properly address the release or threatened release of the hazardous substances found at Site 2. (*Id.* at ¶ 65.) The Government's present motion moves the Court

---

[3] The Government has specified several removal activities at Site 2 in detail as part of their filings with the Court. (*See* Doc. 78-2 at ¶¶ 41-42.)

to enter judgment finding that no genuine dispute of material fact remains as to BSJR's liability for the hazardous substances allegedly released.

## ANALYSIS

This case is an example of the often-referenced allegory that one should be careful when helping others address their dirty laundry. The Government asserts BSJR is jointly and severally liable for EPA's cleanup of hazardous substances at Site 2 under CERCLA. As noted in the Government's briefing, the Government is not moving the Court to find BSJR liable for hazardous substances or the cleanup of Site 1. (Doc. 78-1 at 2, fn 1.)

In 1980 Congress enacted CERCLA and granted the President of the United States broad powers to command federal agencies such as the EPA to clean up sites containing hazardous substances that could potentially pose serious environment harm and health risks. *United States v. Best Foods*, 524 U.S. 51, 55 (1998). When a federal agency participates in the cleanup of a site deemed hazardous or potentially hazardous, those efforts can be financed through a Hazardous Substance Superfund established by CERCLA. 42 U.S.C. §§ 9601(11), 9604; 26 U.S.C. § 9507. CERCLA authorizes the government to recover response costs related to the cleanup of a site containing hazardous substances to ensure the party or parties responsible for that cleanup bear the costs of the government's response. *United States v. Olin Corp.*, 107 F.3d 1506, 1513 (11th Cir. 1997). A party responsible for hazardous waste is jointly and severally liable under CERCLA absent evidence proving the potential or actual environmental harm that required a response is divisible. *Redwing Carriers, Inc. v. Saraland Apartments*, 94 F.3d 1489, 1513 (11th Cir. 1996). Those recognized under CERCLA as a property owner are held strictly liable regardless of whether or not causation exists. *Canadyne-Georgia Corp. v. NationsBank, N.A. (South)*, 183 F.3d 1269, 1275 (11th Cir. 1999) ("CERCLA imposes no duty to act. CERCLA does not allocate liability based on fault or negligence; it is a strict liability statute. CERCLA imposes liability on individuals not based on their causing the release of hazardous substances, but based solely on their prior or current relationship to the polluted property.")

Prior to a district court finding a defendant liable for cleanup costs related to a site deemed hazardous, the government must demonstrate that the site is: (1) defined as a

"facility" under CERCLA; (2) that a release or threatened release of a hazardous substance has occurred, (3) that the release or threatened release caused the government to incur response costs, and (4) that the [d]efendant is a "covered person" under CERCLA. *Redwing Carriers, Inc.,* 94 F.3d at 1466.

The Government provides adequate evidence to find BSJR liable for response costs as it relates to Site 2.  A facility under CERCLA is in part defined as "any site or area where a hazardous substance has been deposited, stored, disposed of, or placed, or otherwise come to be located."  42 U.S.C. § 9601(9).  Harris, on behalf of BSJR, not just allowed for drums containing hazardous substances to be placed at Site 2, he directed Harpole on where to put them on the property. (Doc. 78-12 at 30, ¶¶ 16-17.) Just as there is no dispute Site 2 is a facility, it is also undisputed that Site 2 released hazardous substances. A  "release" under CERCLA is "any spilling, leaking, pumping, pouring, emitting, emptying, discharging, injecting, escaping, leaching, dumping, or disposing" of a recognized hazardous substance into the environment. 42 U.S.C. §§ 9601(14), 9601(22). The EPA detected several hazardous substances within the soil and drums stored on Site 2. Additionally, the VOCs monitored on the site were hazardous enough to necessitate respiratory protection. There is nothing to suggest that hazardous substances were not located at Site 2. Harris during his deposition appears to acknowledge hazardous substances were on his property. (Doc. 78-12 at 48, ¶¶ 10-11)("It appears that I let someone bring hazardous materials on my property.").

Given clear evidence indicating hazardous substances were released, it is no surprise the EPA would incur costs related to responding to those detected hazardous substances. For the Government to recover costs from a Defendant, the Government only needs to prove it incurred those costs responding to the release of a hazardous substance. *United States v. Alcan Aluminum Corp.*, 964 F.2d 252, 264-265 (3rd Cir. 1992).  The Government is not required to prove that a defendant's affirmative actions contributed to the incurred response costs. *Id.* It is of no import that BSJR was unaware of the fact it was allowing hazardous substances to be housed on their property. The fact that hazardous substances were, as a matter of fact located on Site 2 owned by BSJR, is sufficient to find BSJR liable for the EPA's response.

In addition to proving Site 2 was a facility where hazardous substances were found causing the Government to incur costs, there is also sufficient proof to find BSJR within the category of persons who can be liable under CERCLA. CERCLA defines a "person" as "an individual, firm, corporation, association, partnership, consortium, joint venture, [or] commercial entity" amongst other definitions. 42 U.S.C. § 9601(21). BSJR, owned and operated by Harris, is a limited liability company formed in the state of Georgia clearly within the definition of "person" under CERCLA. As a result, the Government has established a *prima facie* case to prove BSJR jointly and severally liable for hazardous substances at Site 2.

To the extent BSJR intends to rely on their previously noted defenses, the Court finds that all three defenses are meritless. (Doc. 15.) As the Government notes in response to BSJR's first possible defense, the Court has already determined that the Government's Complaint was filed within the applicable statute of limitations. (*See* Doc. 65.)

BSJR's second defense that BSJR was not the actual cause of the contamination found on the property, that there were no released substances from Site 2, and that EPA's response could have been less costly has no legal merit either. The Court again reminds BSJR that CERCLA imposes liability upon parties based entirely upon their relationship, prior or current, to the contaminated property. There is no causation requirement. *Alcan Aluminum Corp.*, 964 F.2d at 266. BSJR agreed to house hazardous drums and other materials at Site 2, which emitted hazardous substances. That evidence in itself creates a sufficient relationship with the contaminated property. EPA's expenditures in responding to Site 2 is not of legal import either. CERCLA does not require the Court to make a reasonable cost assessment. Instead, the plain language of the statute states that a person releasing hazardous substances is responsible for "all costs of removal or remedial actions." 42 U.S.C. § 9607(a)(4)(A); *see also United States v. Hardage*, 982 F.2d 1436, 1443 (10th Cir. 1992) (" However, CERCLA § 107(a)(4)(A) does not limit the government's recovery to all *reasonable* costs;  rather, it permits the government to recover *all* costs of removal or remedial action incurred ... not inconsistent with the [NCP].")(internal quotations omitted).

BSJR's last affirmative defense that they are an "innocent third party Defendant" also fails. To the contrary, Harris entered into an affirmative agreement allowing for Harpole to store drums and other materials that were found to be hazardous on his property and directed individuals on where some of the materials should be placed. BSJR's suggestion that they "had no involvement with the other defendants either monetarily, business related, or in any other manner" at this juncture, given Harris' deposition and the record before the Court is not supported. Furthermore, CERCLA imposes strict liability on former and present owners alike whether they knew or should have known about the disposal of hazardous waste. *Briggs & Stratton Corp. v. Concrete Sales & Servs.*, 20 F.Supp.2d 1356, 1366 (M.D. Ga. 1998). For BSJR to argue that it was an innocent third party it must prove that: (1) a third party was the sole cause of the release, (2) that the release of hazardous substances did not occur in connection with a contractual relationship, and (3) that the defendant exercised due care with respect to the hazardous substance. *Id.* There is insufficient evidence before the Court to find that BSJR is an innocent third party recognized under CERCLA. The Government's present motion, the record before the Court, and the evidence overwhelmingly establish that BSJR should be held liable.  There is no genuine issue of material fact as to BSJR's liability considering BSJR was a cause of the hazardous release by allowing the materials to be placed at Site 2 and since BSJR agreed to house drums and other materials without displaying proper due care by not investigating all the drums and other materials contents. BSJR has not responded and therefore, has not identified any evidence to leading the Court to make a contrary finding.

## CONCLUSION

Accordingly, for the aforementioned reasons, the Government's Motion for Summary Judgment is **GRANTED**. [4] (Doc. 78.) BSJR is liable for the Government's response to hazardous substances found at Site 2. BSJR and the Government are hereby **ORDERED** to submit to the Court an amended proposed scheduling order as it relates to

---

[4] The Court notes for the Record that the judgment and findings noted herein are limited only to BSJR's liability. As noted by the Court in its previous Order (Doc. 25), the issue of damages can now be addressed since the Court has addressed the issue of liability.

addressing the issue of damages in the above-captioned matter **by Monday, September 14, 2015**.

     **SO ORDERED**, this   8th   day of September, 2015.

                    /s/ W. Louis Sands

                    **W. LOUIS SANDS, SR. JUDGE**
                    **UNITED STATES DISTRICT COURT**

10